JOSEPH F. WILSON *vs.* FREDERICK A. HAWLEY & others.

Suffolk. January 11, 1893. — March 2, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Promissory Note — Pledge — Collateral Security — Disposition of Security by Pledgee — Discharge in Insolvency — Bar.*

A. borrowed a certain sum of B., a broker, giving him a promissory note therefor and assigning to him as collateral security certain shares of stock. The note provided that the holder of the stock "has authority to sell, transfer, or hypothecate said collateral for his own use." The note was renewed from time to time, and A. finally paid it, upon B.'s representation that he had the certificate of the stock in his possession and his promise to send it to A., which he did not do,

but on that day he failed in business, and made an assignment. In fact, B. without A.'s knowledge pledged the stock for his own purposes on the day when he received it from A., and it was sold by the pledgee after B.'s assignment. B. filed his petition in insolvency, and received his discharge; and A. proved his claim, and received his dividend. *Held*, in an action by A. against B to recover the amount so paid by the former, that the disposition of the stock by B. was not fraudulent, within the meaning of the Pub. Sts. c. 157, § 84, or of the St. of 1885, c. 353, § 6; and that the action was barred by the discharge in insolvency.

CONTRACT for money had and received, with a count in tort for the conversion of certain shares of stock. Answer: 1. A general denial. 2. A discharge in insolvency. Trial in the Superior Court, without a jury, before *Mason*, C. J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence that the defendants, constituting the firm of F. A. Hawley and Company, formerly bankers and stockbrokers in Boston, failed in May, 1884. The plaintiff had a small deposit with them in January, 1884, and prior thereto, and also at the time of the failure, for which he held a deposit-book. On January 10, 1884, he borrowed of the defendants the sum of $500, and gave them therefor his promissory note, and assigned to them the stock specified in the note, which was as follows:

"$500. Boston, Jan. 10, 1884. Thirty days after date I promise to pay to F. A. Hawley & Co. or order five hundred dollars, for value received, with interest at the rate of $5 per month after date, having deposited as collateral security therefor (5 sh's) five shares Bell Telephone stock. And the undersigned further promises, contracts, and agrees as follows, namely: First, that the margin on this collateral shall be kept good at fifty dollars above the market price. Second, that this collateral shall be held as security for all debts, either due or owing to the holder hereof, either at the time of settlement or when the collateral is sold and applied as agreed below. Third, that the holder of said collateral has authority to sell, transfer, or hypothecate said collateral for his own use. Fourth, the holder hereof being required, on payment or tender of the amount due hereon, together with all other sums due or owing the holder hereof, at any time before said collateral shall have been sold or applied, to return a like amount, but is not required to return the specific collateral herewith de-

posited. Fifth, that the holder hereof has authority, upon the non-performance of any of the above promises, contracts, or agreements, to sell without notice said collateral at any brokers' board, at public or private sale, or to purchase it on his own account, at its fair market value, and apply it on account."

The note was renewed from time to time, as appears by the indorsements thereon.

On May 13, 1884, F. A. Hawley, the senior member of the firm, went to the plaintiff's office, taking the note with him, upon which he had written an indorsement of interest for a further extension to June, 1884, and asked the plaintiff if he did not wish to extend the payment again. The plaintiff replied that he did not, but wished to pay it, and asked Hawley if he had the certificate of stock with him. Hawley replied that he had not, that it was at his office, and that he would send it to him immediately. Thereupon the plaintiff drew his check for $500, payable to the defendant's order, and delivered it to Hawley. On the same day, the plaintiff, not receiving his stock, went to the defendants' banking-rooms for it. He was then asked whether he would have the stock reassigned in his own name or in blank, and he replied that he would have it in his own name. He was then told that the certificate was at the Howard National Bank, and that it would take two or three days for the delivery, and he went away satisfied.

The check was deposited on the day of its date by the defendants, and paid in due course. On May 15, 1884, not having received the stock, the plaintiff went again to the defendants' banking-house for it, when he learned that the defendants had failed, and that he must look to their attorney for information. The defendants failed on May 15, and on the same day made an assignment to one Mandell, conveying to him all their assets. The assignee testified that he received no Bell Telephone stock, under the assignment or otherwise, from the defendants.

In fact the stock was pledged to the Howard National Bank by the defendants on January 10, 1884, for their own purposes, but without the knowledge of the plaintiff, except so far as the terms of the note were notice; and it was sold by the bank after the assignment, and a report of the sale made to the

assignee. Demand was made for the stock both upon the defendants and upon their assignee.

The plaintiff had no reason to suppose, except so far as the note was notice that it might be done, that the stock had been disposed of until after he had paid and taken up the note, and then was only told that it was at the Howard National Bank. The defendants filed their petition in insolvency on June 4, 1884, and offered a composition of fifteen per cent, which was confirmed. The plaintiff proved his claim and received his dividend.

The plaintiff contended that the money for payment of the note was obtained from him by fraud and deceit; that the disposition of the collateral security was unauthorized and fraudulent in law; and that neither claim nor cause of action was barred by the discharge; and asked the judge so to rule. But the judge found as a fact that the money was not obtained by deceit, and ruled, as matter of law, that the defendants had a right, under the terms of the note, to dispose of the collateral security as they did; that such disposition was not fraudulent, within the meaning of the Pub. Sts. c. 157, § 84, and the St. of 1855, c. 353, § 6; and that the plaintiff's claims were barred by the discharge in insolvency; and found for the defendants. The plaintiff alleged exceptions.

*E. Avery*, (*G. M. Hobbs* with him,) for the defendants.

*J. O. Teele*, for the plaintiff.

BARKER, J. In pledging for their own debt the shares of stock pledged to them by the plaintiff, the defendants acted within the authority given by that clause of the contract which stated that the holder of the collateral had authority to sell, transfer, or hypothecate it for his own use. Although upon their insolvency the shares were sold by their pledgee, the debt created by their failure to restore them to the plaintiff was not "a debt or claim against a pledgee created by his sale of collateral securities in a manner not authorized by his contract with the pledger." St. 1885, c. 353, § 6. On the contrary, however unwise or extraordinary the plaintiff's contract with the defendants may have been, it distinctly authorized the defendants to deal with the shares in the manner which created the plaintiff's debt. The rulings that the disposition of the shares was not

fraudulent within the meaning of the Pub. Sts. c. 157, § 84, or of the St. of 1885, c. 353, § 6, and that the plaintiff's claims were barred by the discharge in insolvency, were therefore correct.

*Exceptions overruled.*